**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 11-5119**

---

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

        v.

ANTONIO R. HALL, a/k/a Mack,

             Defendant - Appellant.

---

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Richard D. Bennett, District Judge.
(1:10-cr-00744-RDB-1)

---

Argued:  December 7, 2012          Decided:  January 24, 2013

---

Before MOTZ, DUNCAN, and WYNN, Circuit Judges.

---

Affirmed by unpublished opinion.  Judge Wynn wrote the opinion,
in which Judge Motz and Judge Duncan concurred.

---

**ARGUED:** Gary Proctor, LAW OFFICES OF GARY E. PROCTOR, LLC,
Baltimore, Maryland, for Appellant.  John Francis Purcell, Jr.,
OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for
Appellee.  **ON BRIEF:**  Rod J. Rosenstein, United States Attorney,
Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

A federal jury convicted Defendant Antonio R. Hall of several crimes, including the retaliatory murder of a government witness who had provided information about Defendant's criminal activities. At trial, the district court empaneled an anonymous jury and, according to Defendant, limited his note-taking during jury selection. After his conviction, Defendant was sentenced to multiple terms of life imprisonment. At his sentencing, only one of Defendant's two appointed attorneys was present in the courtroom. On appeal, Defendant seeks a new trial and a new sentencing hearing, arguing that the anonymous jury, note-related order, and failure to have both lawyers present at sentencing all constituted error. For the following reasons, we disagree and affirm the district court's rulings.

I.

In early 2008, federal agents conducted an investigation into drug trafficking and related firearm violence in the Westport neighborhood of Baltimore, Maryland. Kareem Guest agreed to cooperate in the Westport investigation. Guest provided information to the Federal Bureau of Investigation ("FBI"), and that information was memorialized in a report called the "Guest FBI 302." The Guest FBI 302 identified

2

several individuals as being involved in drug activities and implicated Defendant as being involved in several murders.

With Guest's help, the Westport investigation resulted in the indictment of eight individuals. Defendant, however, was not among them.

Though the attorneys for the eight indicted individuals agreed in a written discovery agreement not to distribute the Guest FBI 302 to their clients, one of the attorneys violated the agreement and gave his client a copy of the report on May 20, 2009. The Guest FBI 302 then wound up being widely distributed in Westport and even hung on a community telephone pole.

On September 20, 2009, Defendant saw Guest walking in Westport and told Kevin Duckett that he intended to kill Guest for mentioning his name in the Guest FBI 302. Defendant then followed Guest on foot and shot him several times, killing him.

Although a number of people saw Defendant shoot Guest, no witnesses initially came forward. In fact, several witnesses falsely testified before the grand jury that they did not see the murder. At subsequent grand jury appearances and at Defendant's trial, the witnesses admitted that they had, in fact, seen Defendant kill Guest. One witness explained that she had initially been untruthful to protect her family. Another witness stated that he had initially been untruthful because he

3

feared Defendant. Witnesses also testified that Defendant questioned them after their grand jury appearances. Following their cooperation in this case, the government relocated several witnesses due to safety concerns.

Defendant was charged in a superseding indictment with conspiracy to traffic in crack cocaine in violation of 21 U.S.C. § 846 (Count I); conspiracy to use and carry firearms during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(o) (Count II); retaliation against a witness by the willful and deliberate murder of Guest in violation of 18 U.S.C. § 1513(a)(1)(B) (Count III); using, carrying, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Count IV); and possession of ammunition by a felon in violation of 18 U.S.C. § 922(g)(1) (Count V). Because Count III as charged in the indictment is a capital offense, the district court appointed Defendant two attorneys as required by 18 U.S.C. § 3005. The government, however, elected not to seek the death penalty.

Jury selection for Defendant's trial began on August 1, 2011. Just before the venire members were brought into the courtroom for voir dire, defense counsel told the court that the clerk had inadvertently given him the attorney worksheet on which to take notes, but not the panel selection report that the government had had in its possession for approximately thirty

4

minutes. The panel selection report contained juror information including juror number, name, age, occupation, employer, spouse occupation, and home and work addresses.

The district court recognized the oversight and sua sponte ordered the empanelment of an anonymous jury, directing the clerk to strike the juror names from the panel selection report and provide both parties with a redacted copy. The district court instructed that the panel selection report "never leaves the courthouse" and that Defendant "takes no notes in this trial off of that trial table and goes back anywhere with them." J.A. 193.

Defendant objected to the redaction of names from the panel selection report. The district court overruled the objection, explaining that "given the fact that this defendant in this case is charged with murdering a government witness, anonymity of the jury . . . is perfectly appropriate . . . ." J.A. 195. With respect to the government possessing the unredacted panel selection report for approximately thirty minutes, the district court stated that there was no prejudice to Defendant because the government did not have time to look at the list and would not have any recollection of the jurors' names.

Defendant, in turn, filed a Motion for Mistrial based on the court's empaneling an anonymous jury. In the motion, Defendant also objected to the district court's order regarding

5

Defendant's notes during the jury selection process. The district court denied Defendant's motion.

On August 11, 2011, the jury found Defendant guilty on all counts.[*] At his sentencing hearing, Defendant objected to proceeding because one of his two appointed attorneys was not present. The district court overruled the objection and sentenced Defendant to four terms of life imprisonment.

II.

On appeal, Defendant contends that the district court erred by (1) empaneling an anonymous jury sua sponte; (2) ordering that Defendant take no notes during jury selection; and (3) sentencing Defendant with only one of his two attorneys present. We address each issue in turn.

A.

With his first argument, Defendant contends that the district court erred when it sua sponte empaneled an anonymous jury. We review a district court's decision to empanel an anonymous jury for an abuse of discretion. United States v. Dinkins, 691 F.3d 358, 371 (4th Cir. 2012).

---

[*] The government dismissed Count II.

6

A federal district court may empanel an anonymous jury in any non-capital case in which "'the interests of justice so require.'" Id. at 372 (quoting 28 U.S.C. § 1863(b)(7)). In a capital case, however, the district court may empanel an anonymous jury only after determining "by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person." 18 U.S.C. § 3432; see also Dinkins, 691 F.3d at 372. The district court must, therefore, base its decision to empanel an anonymous jury in a capital case on the evidence in the record and may not rely solely on the indictment to support its decision. Dinkins, 691 F.3d at 373.

This Circuit has not yet addressed whether a case loses its capital nature for Section 3432 purposes if the government does not seek the death penalty. In interpreting similar statutes, we have indicated that, regardless of whether the government actually seeks the death penalty, an offense is capital if the death penalty may be imposed under the enabling statute. See, e.g., United States v. Ealy, 363 F.3d 292, 297 n.2 (4th Cir. 2004); United States v. Boone, 245 F.3d 352, 358-59 (4th Cir. 2001). Yet, in other cases, we have suggested that a defendant may lose the benefits afforded a capital defendant if the government does not in fact seek the death penalty. See, e.g., United States v. Robinson, 275 F.3d 371, 384 (4th Cir. 2001); United States v. Cowan, Nos. 95-5508, 95-5509, 1996 WL 521049,

7

at *10 n.4 (4th Cir. Sept. 16, 1996) (unpublished) (per curiam). We need not resolve this issue here, however, because even assuming that this is a capital case to which the higher standard applies, we hold that the district court did not err by empaneling an anonymous jury.

The decision to empanel an anonymous jury is "an unusual measure which must be plainly warranted by the particular situation presented." Dinkins, 691 F.3d at 372 (citations and quotation marks omitted). A district court may empanel an anonymous jury only in rare circumstances when two conditions are met: "(1) there is strong reason to conclude that the jury needs protection from interference or harm, or that the integrity of the jury's function will be compromised absent anonymity; and (2) reasonable safeguards have been adopted to minimize the risk that the rights of the accused will be infringed." Id. (citations omitted).

In Dinkins, we identified five factors, hailing from United States v. Ross, 33 F.3d 1507, 1520 (11th Cir. 1994), and referred to as the Ross factors, for determining whether "strong reasons support[] the empaneling of an anonymous jury":

> (1) the defendant's involvement in organized crime,
> (2) the defendant's participation in a group with the
> capacity to harm jurors, (3) the defendant's past
> attempts to interfere with the judicial process, (4)
> the potential that, if convicted, the defendant will
> suffer a lengthy incarceration and substantial
> monetary penalties, and (5) extensive publicity that

8

> could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment.

Dinkins, 691 F.3d at 373 (citations omitted).  The list of Ross factors is not exhaustive, nor does the presence of any one factor or set of factors automatically compel a court to empanel an anonymous jury.  Id.  Rather, a district court must engage in a context-specific inquiry based on the facts of the particular case.  Id.

Applying the standards outlined in Dinkins, we first consider whether the district court abused its discretion by determining that disclosure of the venire members' names could have jeopardized their lives or safety.

We begin by addressing the first and third Ross factors: whether the record shows that Defendant participated in organized criminal activity and interfered with the judicial process in the past.  At the time the district court ruled on the anonymous jury issue, the record contained evidence supporting the conclusion that Defendant participated in organized criminal activity as a drug trafficker and that he had previously attempted to interfere with the judicial process.  The indictment alleged that Defendant conspired with others to obtain and distribute cocaine in Westport and that he killed Guest for providing information to law enforcement officers.  In its response to Defendant's pretrial motions and at the motions

9

hearing on July 22, 2011, the prosecution proffered that several witnesses would testify that "they bought [drugs] from [Defendant] for years[,]" that one witness referred to Defendant as "King Kong" because he "ran" Westport, that Defendant told Duckett he was going to kill Guest for naming him in "those papers[,]" and that Defendant shot people in the past because of "a drug beef" and because they provided information about Defendant to the police. J.A. 123, 157-58. The government also provided the district court with witness statements to the same effect. Accordingly, the preponderance of the evidence before the district court at the time of its decision showed that Defendant participated in organized criminal activity as a drug trafficker and that he had previously interfered with the judicial process by murdering Guest and shooting at least one other person for assisting authorities.

Next, we examine the fourth Ross factor: whether Defendant faced the possibility of severe punishment if convicted. Here, Defendant's potential punishment of multiple life sentences lends support to the conclusion that he "had an incentive to resort to extreme measures in any effort to influence the outcome of [his] trial." Id. at 376 (quotation omitted).

Because the record does not indicate whether Defendant participated in a group with the capacity to harm jurors or whether the case garnered extensive publicity, we do not address

10

the second or fifth Ross factors.  Nevertheless, based on the applicable Ross factors, we conclude that when the district court rendered its decision to empanel an anonymous jury, the record established by a preponderance of the evidence that the lives or safety of the venire members may have been jeopardized, had their names been provided to the parties.

We next consider whether the district court adopted reasonable safeguards to minimize the risk that Defendant's constitutional rights would be infringed by empaneling an anonymous jury.  Id. at 378.  Further, we examine Defendant's challenge of the district court's decision to empanel an anonymous jury sua sponte.

This Court has held that the decision to empanel an anonymous jury may affect a defendant's constitutional right to a presumption of innocence by suggesting to the jurors that "the defendant is a dangerous person from whom the jurors must be protected."  Id. at 372 (quotation marks omitted).  Further, a court's decision to withhold certain biographical information from the parties may affect a defendant's constitutional right to trial by an impartial jury by hindering the defendant's ability to conduct an informed voir dire examination and to challenge effectively the seating of individual jurors.  Id.

In this case, the district court adopted reasonable safeguards to minimize the risk that Defendant's constitutional

11

rights would be infringed.  First, the venire members were not informed that their names were withheld from the parties. Accordingly, their anonymity created neither an inference of danger nor an adverse effect on the presumption of innocence. See id. at 378.

Second, the district court's decision to withhold the venire members' names did not affect Defendant's ability to conduct an informed voir dire examination.  Notably, only the prospective jurors' names were withheld.  Both parties were provided with all other juror information, including juror number, age, occupation, employer, spouse occupation, and home and work addresses.  See id. at 379 (concluding that the defendants' right to an impartial jury was not infringed because, although the names and addresses of the venire members and their spouses were withheld, other information, such as the zip codes, county, and neighborhoods of the prospective jurors, was provided).

Finally, the fact that the district court empaneled an anonymous jury sua sponte does not change our analysis. Because the purpose of an anonymous jury is to protect the jury and the integrity of the justice system, and an anonymous jury is permissible so long as the district court takes reasonable precautions to safeguard the defendant's rights, "no principle would distinguish an order to empanel an anonymous jury made sua

12

sponte from one based on a party's motion." United States v. Shryock, 342 F.3d 948, 971 (9th Cir. 2003).

In sum, the evidence in the record supports the district court's decision to empanel an anonymous jury, and the district court took reasonable precautions to safeguard Defendant's rights. Accordingly, the district court did not abuse its discretion by empaneling an anonymous jury.

B.

Defendant next contends the district court erred by ordering that he take no notes during jury selection. The government argues that Defendant mischaracterizes the district court's order. According to the government, the district court ordered that Defendant could not take any notes about the jurors out of the courtroom.

"[T]he district court has broad discretion in the conduct of voir dire and will be reversed only for an abuse of discretion." United States v. ReBrook, 58 F.3d 961, 969 (4th Cir. 1995) (citation omitted). Here, we discern none.

After deciding to strike the jurors' names from the panel selection sheets, the district court gave the following order:

> THE COURT: . . . This sheet [attorney worksheet] never leaves the courthouse. And there are no notations made of any kind at all. [Defendant] takes no notes in this trial off of that trial table and goes back anywhere with them. . . .

13

[DEFENSE COUNSEL]: No notes?

THE COURT: He's not taking any notes of any kind.

[DEFENSE COUNSEL]: Of the jury selection.

THE COURT: Of jury selection and taking them back and taking them anywhere.

J.A. 193-94.   As part of his motion for mistrial, Defendant objected to the order, characterizing it as forbidding him from taking notes during jury selection.

While the district court's order was not as clear as it ideally should have been, we understand it to have prohibited Defendant from removing any notes from the courtroom and not from taking any notes.   Notably, Defendant never asked the district court for a clarification of its ruling, nor did he ask the district court for additional attorney-client consultation time during voir dire because he understood that he was not to take notes.   Further, even assuming that the district court had indeed ruled that Defendant was not allowed to take notes during jury selection, Defendant does not cite, nor did we find, any authority to support his argument that his constitutional right to be present during jury selection includes a right to take notes.   In sum, we cannot conclude that the district court abused its discretion with its jury selection notes order.

14

C.

With his last argument on appeal, Defendant briefly contends that the district court erred by ordering him to proceed to sentencing without one of his attorneys present. Specifically, Defendant's other counsel indicated that he could not attend the sentencing hearing due to a scheduling conflict. Defendant, however, does not allege any prejudice resulting from the absence of one of his appointed attorneys. Additionally, Defendant faced a mandatory minimum term of life imprisonment without release for Count I. See 21 U.S.C. §§ 841(b)(1)(A) and 851. Under these unique facts, we conclude that the absence of one of his attorneys at his sentencing did not prejudice Defendant.

III.

In sum, we conclude that the district court did not err in its various rulings and, accordingly, we affirm.

AFFIRMED